No. 11-56843

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

THOMAS ROBINS, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

vs.

SPOKEO, INC.,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Central District of California
Case No. 10-cv-05306
The Hon. Otis D. Wright II, United States District Judge

---

## BRIEF OF APPELLEE SPOKEO, INC. FOLLOWING REMAND FROM
## THE SUPREME COURT

---

John Nadolenco
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
*jnadolenco@mayerbrown.com*

Donald M. Falk
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000
*dfalk@mayerbrown.com*

Andrew J. Pincus
Archis A. Parasharami
Stephen C.N. Lilley
Daniel E. Jones
MAYER BROWN LLP
1999 K ST NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
*apincus@mayerbrown.com*
*aparasharami@mayerbrown.com*
*slilley@mayerbrown.com*
*djones@mayerbrown.com*

*Attorneys for Defendant-Appellee Spokeo, Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

BACKGROUND ....................................................................................3

ARGUMENT ......................................................................................10

I.    The Procedural Violations Alleged Here Do Not Entail A Degree of
      Risk Sufficient To Meet The Concreteness Requirement For Standing .......10

      A.    The Supreme Court Squarely Held That "Robins Cannot Satisfy
            The Demands Of Article III By Alleging A Bare Procedural
            Violation" Of The Statutes He Invokes Here ......................................13

      B.    Even In Conjunction With The Particular Alleged Inaccuracies,
            The Procedural Violations Alleged Here Do Not Meet The
            Concreteness Requirement For Standing. ...........................................19

II.   Robins Has Alleged Neither An Actual Or Impending Injury Nor The
      Causation Necessary For Article III Standing. ...............................................23

      A.    The Complaint's Allegations Of Direct Harm Do Not Satisfy
            *Clapper*. ..............................................................................................23

      B.    *Clapper* Underscores Robins' Failure To Plead Causation. ..............28

CONCLUSION ....................................................................................29

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Allen v. Wright*, 468 U.S. 737 (1984) ....................................................................28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................24, 25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................24, 25

*Carey v. Piphus*, 435 U.S. 247 (1978) ..................................................................21

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013) ...................................*passim*

*Clark v. City of Lakewood*, 259 F.3d 996 (9th Cir. 2001) .......................................27

*Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409 (4th Cir. 2001) ...............22

*DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008) ...............................22

*Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141 (9th Cir. 2000) ......29

*Edwards v. First Am. Corp.*, 610 F.3d 514 (9th Cir. 2010) ...............................7, 24

*Federal Election Commission v. Akins*, 524 U.S. 11 (1998) ............................15, 16

*Gest v. Bradbury*, 443 F.3d 1177 (9th Cir. 2006) ..................................................24

*Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012) ...............................................12

*Koropoulos v. Credit Bureau, Inc.*, 734 F.3d 37 (D.C. Cir. 1984) .........................22

*Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010) .................................12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................12, 24, 28

*Machlan v. Procter & Gamble Co.*, 77 F. Supp. 3d 954 (N.D. Cal. 2015) .............24

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ...........................................28

*McClurg v. Ross*, 5 Binn. 218 (Pa. 1812) ..............................................................21

## TABLE OF AUTHORITIES – Continued

**Cases**                                                    **Page(s)**

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)................................................20

*National Audubon Soc., Inc. v. Davis*, 307 F.3d 835 (9th Cir. 2002).....................29

*Public Citizen v. Department of Justice*, 491 U.S. 440 (1989).........................15, 16

*Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011)..............................................12

*Robins v. Spokeo Inc.*, 742 F.3d 409 (9th Cir. 2014)..........................................7, 24

*Runkle v. Meyer*, 3 Yeates 518 (Pa. 1803).............................................................19

*San Diego Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996)....................28

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)............................28

*Spokeo v. Robins*, 136 S. Ct. 1540 (2016) ........................................................*passim*

*Washington v. CSC Credit Services Inc.*, 199 F.3d 263 (5th Cir. 2000) ..........22, 27

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ......................................................4, 12


**Statutes**                                                 **Page(s)**

15 U.S.C. § 1681b...........................................................................................6

15 U.S.C. § 1681b(b)(1) ...............................................................................14

15 U.S.C. § 1681e(b) ............................................................................*passim*

15 U.S.C. § 1681e(d).................................................................................5, 14

15 U.S.C. § 1681j...........................................................................................6

15 U.S.C. § 1681j(a) ....................................................................................14

**TABLE OF AUTHORITIES – Continued**

**Statutes**          **Page(s)**

15 U.S.C. § 1681n(a)(1).............................................................18

15 U.S.C. § 1681*o*(a) ...............................................................18


**Other Authorities**          **Page(s)**

JAMES KENT, COMMENTARIES ON AMERICAN LAW (1827) ................................19, 20

WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND
(1st ed. 1768) ........................................................................20

RESTATEMENT (FIRST) OF TORTS § 558 (1934).........................................18

RESTATEMENT (SECOND) OF TORTS § 559 (1977).....................................20

John G. Roberts, Jr., *Article III Limits on Statutory Standing*,
42 Duke L.J. 1219 (1993) .............................................................16

iv

## INTRODUCTION

The Supreme Court rejected Plaintiff-Appellant Thomas Robins' contention that pleading a violation of the Fair Credit Reporting Act (FCRA) is by itself sufficient to establish the injury in fact necessary for Article III standing. 136 S. Ct. 1540 (2016). On remand, this Court asks whether "the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement" for Article III standing. Dkt. No. 72 (quoting 136 S. Ct. at 1550).

They do not.

*Spokeo* held that a concrete injury is one that is "'real' and not 'abstract,'" (*id.* at 1548); recognized that some claims of intangible injury may satisfy that standard; and explained that courts should assess two factors in determining whether an asserted intangible injury is sufficiently concrete: (1) "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," (*id.* at 1549), and (2) "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements," whether Congress made a "judgment" that particular harms should be sufficient to institute an action in court. (*id.*).

1

The Court pointed out that, under its precedents, a plaintiff need not wait to file suit until after a harm occurs. The "risk of real harm" may suffice—and the Court cited in support of that proposition its decision in *Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1143 (2013), which established that only "certainly impending" harm is sufficient to satisfy Article III's injury-in-fact requirement.

Neither the statutory violations alleged here nor the factual allegations of the complaint demonstrate that Robins suffered the required concrete harm or faced a "certainly impending" risk of harm.

*First*, no concrete harm or sufficiently certain risk of concrete harm automatically results from every alleged violation of the statutory provisions on which Robins relies. The Supreme Court observed that violations "of the FCRA's procedural requirements may result in no harm," both because the procedural violations do not necessarily result in the publication of inaccurate information and because "not all inaccuracies cause harm or present any material risk of harm." 136 S. Ct. at 1550. That is why the Supreme Court squarely held, in "the context of this particular case," that "Robins cannot satisfy the demands of Article III by alleging a bare procedural violation." *Id.*

*Second*, the allegedly inaccurate information about Robins available on Defendant-Appellee Spokeo, Inc.'s website, which Robins claims to have resulted

from the principal asserted statutory violation, does not meet the concreteness requirement of Article III. An inaccurate statement by itself was not sufficient to institute an action in court at the time Article III was written. And nothing in the Fair Credit Reporting Act manifests a judgment by Congress that every inaccurate statement should be actionable in federal court.

*Third*, the inaccuracies that Spokeo allegedly published generally place Robins in a favorable light. While Robins can speculate how such seemingly flattering but inaccurate information *might* somehow subject him to a theoretical risk of harm, the availability of this information did not in itself expose Robins to any injury that was "certainly impending" (*Clapper*, 133 S. Ct. at 1143)—and thus sufficiently concrete.

In sum, Robins has alleged no actual concrete injury, and his pleaded apprehension about potential actions by unknown third parties is too speculative and indistinct to satisfy the risk-of-harm test. He accordingly lacks standing to assert his claims, and the judgment of the district court should be affirmed.

## BACKGROUND

Robins sued Spokeo, the operator of a people search engine, alleging that Spokeo is a "consumer reporting agency" that issues "consumer reports" in

3

violation of the FCRA. SER27.[1] Robins alleged that the search results associated with his name were inaccurate and that Spokeo violated certain procedural requirements under the FCRA. SER33-38. In light of his continued unemployment, Robins alleged "concern[]" about possible ill effects from the claimed inaccuracies. SER 30.

The district court dismissed Robins' initial complaint with leave to amend, holding that he had failed to allege an injury in fact and thus lacked Article III standing. ER35:1-3. The district court emphasized that "'[a]llegations of possible future injury do not satisfy the [standing] requirements of Art. III.'" ER35:3 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). It consequently concluded that "Plaintiff's concern" that he could be "adversely affected by Defendant's website in the future[] is an insufficient injury to confer standing." *Id.*

Robins amended his complaint, again asserting that the information in his Spokeo search results was inaccurate. ER40:7. In particular, Robins again pleaded that the results included "an image of Robins [that] was not in fact Plaintiff," and that the search results "incorrectly stated he was in his 50s, that he was married, that he was employed in a professional or technical field, and that he has children." ER40:7 ¶ 31. The search results allegedly also were incorrect in stating that "his

---

[1]     Spokeo disputes Robins' claims that it is a "consumer reporting agency" within the meaning of the FCRA, and that its search engine results are "consumer reports," but at this stage of the litigation a court must accept those allegations for the purposes of addressing Spokeo's standing arguments.

economic health is 'Very Strong,' and that his wealth level is in the 'Top 10%.'" ER40:7 ¶¶ 32-33.

Robins asserted that these alleged inaccuracies were "particularly harmful to Plaintiff in light of the fact that he is currently out of work and seeking employment," ER40:7 ¶ 34, although he did not explain the nature of the harm from the inaccuracies. Robins alleged only that he had been "actively seeking employment throughout the time that Spokeo has displayed inaccurate consumer reporting information about him and he has yet to find employment." *Id.*

He further stated that Spokeo had caused him "actual and/or imminent harm" and "actual harm to [his] employment prospects" that is "also imminent and ongoing." ER40:8, at ¶ 35. Robins also asserted that "[b]ecause [he] is unemployed, he has lost and continues to lose money," ER40:8 ¶ 36, and that he "suffered actual harm in the form of anxiety, stress, concern, and/or worry about his diminished employment prospects." ER40:8 ¶ 37.

Robins alleged that Spokeo had violated four procedural requirements of the FCRA. ER40:8 ¶ 38.[2] First, he alleged that Spokeo violated Section 1681e(d) by failing to provide a required "User Notice" to recipients of consumer reports and by failing to provide a required "Furnisher Notice" to entities that provided

---

[2]    Robins also asserted a claim under the California Unfair Competition Law. ER40:15. That claim was dismissed for failure to state a claim (ER52:6) in a ruling that Robins did not appeal.

information to Spokeo. ER40:12-13. Second, he maintained that Spokeo violated Section 1681e(b) by failing "to follow reasonable procedures to assure the maximum possible accuracy of the information concerning the individual about whom the report relates." *Id.* Third, he asserted that Spokeo failed to ensure that recipients of consumer reports provided for employment purposes complied with certain disclosure requirements imposed by Section 1681b. ER40:13-14. Fourth, he alleged that Spokeo violated Section 1681j by failing to post a toll-free telephone number on its website through which consumers could request free annual file disclosures. ER40:14.

Robins sought to represent a putative nationwide class that was not tied to any alleged violation or its consequences, however. The pleaded class included "[a]ll individuals in the United States" for whom Spokeo search results displayed "information relating to their credit . . . , character, general reputation, personal characteristics, or mode of living." ER 40 ¶ 38. It did not limit the class to individuals about whom Spokeo's website contained *inaccurate* information.

After initially holding that the amended complaint sufficiently alleged injury in fact, ER52:3, the district court reconsidered its views and dismissed the case based on the Article III analysis in its original dismissal order, ER66. It further held that "the alleged harm to Plaintiff's employment prospects is speculative,

attenuated and implausible." ER66. Robins did not seek leave to amend his complaint a second time, but chose instead to appeal to this Court.

This Court reversed, concluding that the appeal was governed by Circuit precedent holding that the allegation of a particularized statutory violation was sufficient to establish Article III standing. 742 F.3d 409, 412 (9th Cir. 2014) (citing *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010)). Under *Edwards*, the "creation of a private cause of action to enforce a statutory provision implies that Congress intended the enforceable provision to create a statutory right," and "the violation of a statutory right is usually a sufficient injury in fact to confer standing." *Id.*

The Court held that Robins had "satisf[ied] the injury-in-fact requirement of Article III" because "he allege[d] that Spokeo violated *his* statutory rights, not just the statutory rights of other people," and because his "personal interests in the handling of his credit information are individualized rather than collective." *Id.* at 413. (The Court specifically did not rest its ruling on the alleged harm to Robins' employment prospects and related anxiety. *See id.* at 414 n.3.) The Court further explained that, "[w]here statutory rights are asserted," its precedents had "described the standing inquiry as boiling down to 'essentially' the injury-in-fact prong." *Id.* at 415. The Court consequently found the causation and redressability requirements also satisfied. *Id.*

7

The Supreme Court vacated this Court's decision. 136 S. Ct. 1540. The Court explained that, to satisfy Article III, a plaintiff must demonstrate that he or she suffered "an injury in fact" that is not only "particularized," but also "concrete." *Id.* at 1548. That is, the plaintiff must show that his or her alleged injury "actually exist[s]" and that it is "'real,' and not 'abstract.'" *Id*. The "risk of real harm," however, may "satisfy the requirement of concreteness." *Id*. (citing *Clapper*, 133 S. Ct. 1138).

Noting that "intangible injuries can . . . be concrete," *id.*, the Court explained that in assessing whether a particular claim of intangible harm satisfies the concreteness standard, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* In addition, the Court stated that Congress may attempt to "identify intangible harms that meet minimum Article III requirements," and that Congress's judgment is "instructive and important." *Id*.

The Court cautioned, however, that "Congress's role . . . does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. Thus, a plaintiff "could not . . . allege a bare

procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

In a paragraph applying its analysis to "the context of *this particular case*," the Supreme Court held that "*Robins cannot satisfy the demands of Article III by alleging a bare procedural violation*" because a "violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550 (emphases added). For example, the Court explained, a consumer reporting agency could violate a procedural requirement but the information reported "regardless may be entirely accurate." *Id.* "In addition," the Court continued, "not all inaccuracies cause harm or present any material risk of harm"; for example, the dissemination of "an incorrect zip code" would be harmless. *Id.*

The Supreme Court took "no position as to whether [this Court]'s ultimate conclusion—that Robins adequately alleged an injury in fact—was correct." 136 S. Ct. at 1550. The Court remanded the case to answer "the question framed by [its] discussion, namely, whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement." *Id.* Upon remand, this Court directed the parties to provide supplemental briefing on that question and on any other issues that remain outstanding. Dkt. No. 72.

**ARGUMENT**

**I.  THE PROCEDURAL VIOLATIONS ALLEGED HERE DO NOT ENTAIL A DEGREE OF RISK SUFFICIENT TO MEET THE CONCRETENESS REQUIREMENT FOR STANDING.**

In vacating this Court's earlier decision, the Supreme Court held that a plaintiff must allege "concrete" harm—which the Supreme Court described as harm that "actually exists" and is "real" and "not abstract"—to establish Article III standing. 136 S. Ct. at 1548.

The Court explained that the allegation of a statutory violation does not by itself suffice to meet the "real" harm standard: "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549.

A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Because "Article III standing requires a concrete injury even in the context of a statutory violation," *id.*, a plaintiff has standing to bring a statutory claim only when the asserted violation encompasses an allegation of concrete harm—either because (1) an element of the cause of action requires proof of such a harm, and the plaintiff alleges facts sufficient to establish that element (*see id.* at 1549-50); or (2) the plaintiff separately alleges facts establishing a concrete harm (*see id.* at 1549).

Robins has not previously explained how the allegations in this case are sufficient to meet the concreteness requirement for standing. On remand, he may attempt to reprise his argument that the violation of the statutory provisions at issue automatically carries a sufficient risk of injury in every instance. But the Supreme Court's decision forecloses that theory. The Court made clear that violations of the statutory provisions at issue here may result in no harm, which precludes any categorical rule that a violation automatically leads to either an existing concrete injury or a "certainly impending" concrete injury. *Clapper*, 133 S. Ct. at 1143.

Robins also might contend that the mere presence of inaccurate information about him in Spokeo search results is a sufficiently concrete injury and that the alleged injury is tied to the alleged failure to follow reasonable procedures. That theory fares no better.

The presence of inaccurate information on a website, by itself, does not constitute concrete harm. There was no tradition in English or American courts at the time Article III was written of allowing lawsuits over an inaccurate statement by itself, and the FCRA—which does not expressly require proof of inaccuracy as an element—does not reflect a Congressional judgment that every inaccurate statement should be actionable.

Neither does the availability of inaccurate information carry a "certainly impending" risk of concrete harm. As noted above, in addressing how to assess

11

whether a degree of future risk is sufficiently material to meet the concreteness requirement, the Supreme Court pointed to its decision in *Clapper*. *See* 136 S. Ct. at 1549. In *Clapper*, the Court reiterated "the well-established requirement that threatened injury must be 'certainly impending.'" 133 S. Ct. at 1143 (quoting *Whitmore*, 495 U.S. at 158). *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992). In contrast, "'[a]llegations of *possible* future injury' are not sufficient" to establish Article III standing. *Clapper*, 133 S. Ct. at 1147 (quoting *Whitmore*, 495 U.S. at 158).[3]

It may be *possible* that the availability of the information Robins alleges is untrue might lead to injury at some point in the future. But that mere possibility is not enough under the Supreme Court's decisions in this case and *Clapper*.

---

[3]      In his principal brief in this Court, Robins relied heavily on *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010), for the proposition that *any* increased risk of harm—not just the "material risk" required by the Supreme Court in this case (136 S Ct. at 1550)—sufficed to confer standing, and that anxiety about the possibility of harm resulting from inaccurate information also provided a concrete injury. The extent to which *Krottner* retains precedential force after *Clapper* is uncertain, because *Clapper* flatly disapproved the notion that worrying about a speculative, "hypothetical future harm that is not certainly impending" allows an anxious plaintiff to bootstrap his way to standing. *Clapper*, 133 S. Ct. at 1155. This Court need not decide the precise extent to which *Krottner* survives in any other respect, however, because (as explained in our principal brief) the operative complaint does not allege a sufficiently concrete risk of harm to satisfy *Krottner*, particularly when that decision is construed in light of *Clapper*. *See* Spokeo Br. (Dkt. No. 26) 36-40. Moreover, extending *Krottner* to cover the allegations in the present case would create a circuit split with, at a minimum, *Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012), and *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011) (Aldisert, J.).

## A. The Supreme Court Squarely Held That "Robins Cannot Satisfy The Demands Of Article III By Alleging A Bare Procedural Violation" Of The Statutes He Invokes Here.

Robins cannot avoid dismissal on a theory that every violation of each of the four FCRA provisions he invokes automatically inflicts concrete harm or a certainly impending risk of concrete harm.

To begin with, Robins disavowed that theory before the Supreme Court and rested his standing defense *not* on the claimed statutory violations by themselves, but rather on the alleged presence of inaccurate information on Spokeo's website. His brief focused almost exclusively on the alleged violation of Section 1681e(b)'s requirement "to follow reasonable procedures to assure the maximum possible accuracy of the information concerning the individual about whom the report relates." It stated that the allegations of other FCRA violations "are appropriately understood as supporting Robins' overarching claim that Spokeo's inadequate procedures led to its inaccurate report about him and his inability to correct those inaccuracies." Brief for the Respondent at 33 n.5, *Spokeo*, 136 S. Ct. 1540 (2016) (No. 13-1339), 2015 WL 5169094.

In oral argument, Robins' counsel reiterated that he was asserting "one claim" based on the alleged violation of Section 1681e(b). Transcript of Oral Argument at 48-49, *Spokeo*, 136 S. Ct. 1540 (2016) (No. 13-1339), 2015 WL 6694910. And, in response to questioning, he agreed that in the absence of

inaccurate information, a plaintiff would lack standing to challenge the absence of an 800 number on the website. *Id.* at 43.

Not surprisingly, therefore, the Supreme Court foreclosed any claim of standing based on bare statutory violations when it held, in "the context of this particular case," that "Robins cannot satisfy the demands of Article III by alleging a bare procedural violation" of those provisions. 136 S. Ct. at 1550.

The Court's analysis of Article III inexorably led to that conclusion because a "violation of one of the FCRA's procedural requirements may result in no harm." *Id.* Indeed, of the four procedural violations of the FCRA that Robins alleges, three so patently fail to present the "degree of risk sufficient to meet the concreteness requirement" for Article III standing (*id.*) that Robins effectively disavowed them. These are the alleged failures (1) to issue notices to providers and users of information (15 U.S.C. § 1681e(d)); (2) to make the required disclosures upon providing "consumer report[s] for employment purposes" (*id.* § 1681b(b)(1)); and (3) to post toll-free telephone numbers to allow consumers to request consumer reports (*id.* § 1681j(a)). Nothing in Robins' operative complaint suggests—and there is no reasonable basis for an assertion—that either concrete harm or "certainly impending" concrete harm automatically follows from these technical violations of the FCRA.

Nor could a claim of concrete harm rest on a strained analogy between those alleged violations and the violations at issue in *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), and *Public Citizen v. Department of Justice*, 491 U.S. 440 (1989). The violations here involve obligations to provide notices or disclosures to third parties, and to post an 800 number to facilitate acquiring one's own report. By contrast, *Akins* and *Public Citizen* involved a requirement that the government provide specific information *that had been requested by the plaintiff*. *Akins* "confirm[ed] that a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III." 136 S. Ct. at 1549 (discussing *Akins*). *Public Citizen* held "that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act 'constitutes a sufficiently distinct injury to provide standing to sue.'" *Id.* at 1549-50 (discussing *Public Citizen*).

In each case, the plaintiffs alleged that they had requested that the government provide them with information to which they had a right, but that the government had not done so—the concrete injury in fact was the government's failure to provide information requested by the plaintiff. As future Chief Justice Roberts observed, "Another individual who has not made a disclosure request, and therefore has not suffered a wrongful denial, has not been injured and does not have standing to sue, even if he would like to have access to the same documents."

15

John G. Roberts, Jr., *Article III Limits on Statutory Standing*, 42 Duke L.J. 1219, 1228 n.60 (1993).

Not only were the plaintiff groups refused something tangible to which they were entitled by law, but the deprivation impaired their ability to participate in the democratic process. The *Akins* Court stated that "the information would help [plaintiffs] (and others to whom they would communicate it) to evaluate candidates for public office, especially candidates who received assistance from AIPAC, and to evaluate the role that AIPAC's financial assistance might play in a specific election." 524 U.S. at 21. And in *Public Citizen* the deprivation was of information the interest groups needed to scrutinize the "workings" of government in order to "participate more effectively in the judicial selection process." 491 U.S. at 449.

Spokeo's alleged failure to provide these notices bears no resemblance to the government's failure to perform a ***requested*** mandatory duty—something for which the longstanding mandamus remedy provides a historical analogue. It also does not imperil Robins' ability to participate in the democratic process or lead directly to any other obvious negative effect on him.

The fourth procedural violation that Robins alleges fares no better. Robins claims that Spokeo failed to meet its statutory obligation to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. *See* 15

16

U.S.C. § 1681e(b).[4] But, again, in the Supreme Court Robins disavowed reliance on the naked statutory violation alone and focused on the availability of allegedly inaccurate information. *See* page 13, *supra*.

The Supreme Court agreed that alleging a bare violation of the FCRA is insufficient to establish standing because "a violation . . . may result in no harm." 136 S. Ct. at 1550. First, reported information "may be entirely accurate" even though the reporting agency did not use reasonable procedures. *Id.* Second, "not all inaccuracies cause harm or present any material risk of harm." *Id.* For example, as the Court observed, "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.*

Robins is not helped by comparing his allegations to "harm[s] that [have] traditionally been regarded as providing a basis for a lawsuit in English or American courts" at the time Article III was adopted. 136 S. Ct. at 1549. In the Supreme Court, he maintained that the statutory requirement to follow reasonable procedures to ensure the maximum accuracy of information was closely related to common law defamation, making it permissible to conclusively presume risk of injury under that section of the FCRA. *See* Br. for the Respondent at 44, *Spokeo*, 136 S. Ct. 1540 (2016) (No. 13-1339), 2015 WL 5169094.

---

[4]    Although Robins alleges that Spokeo's negligence was "willful," ER40:13-14, that does not change the nature of the conduct alleged to violate the statute—the failure to "follow reasonable procedures"—and thus is irrelevant to the analysis of the risk of harm caused by the alleged violation.

But libel and slander require falsity. *See*, *e.g.*, RESTATEMENT (FIRST) OF TORTS § 558 (1934) (stating that an action for defamation must allege, among other things, the "publication of false . . . matter"). Claims based on allegedly unreasonable procedures that did not generate false information cannot satisfy Article III; as the Supreme Court explained, "a violation of one of the FCRA's procedural requirements may result in no harm," such as when the "information regardless [of the violation] may be entirely accurate." 136 S. Ct. at 1550. Robins did not and cannot point to any principle of common law that allowed an action merely because a speaker followed inadequate procedures—even if the information disseminated was true or harmless. And in holding that "Robins cannot satisfy the demands of Article III by alleging a bare procedural violation" of the FCRA (136 S. Ct. at 1550), the Supreme Court categorically rejected Robins' assertion of the analogy.

Similarly, Robins cannot point to a congressional judgment that failure to use reasonable procedures to ensure maximum accuracy should permit an action in court in the absence of conventional injury in fact. Congress created a private cause of action for *every* violation of the FCRA (*see* 15 U.S.C. § 1681*o*(a)); and it subsequently authorized statutory damages for *every* willful violation (*see id.* § 1681n(a)(1)). There is no evidence that Congress focused on violations of

Section 1681e(b) and made a "judgment" (136 S. Ct. at 1549) that such violations should be actionable even when not accompanied by any real-world injury.

**B. Even In Conjunction With The Particular Alleged Inaccuracies, The Procedural Violations Alleged Here Do Not Meet The Concreteness Requirement For Standing.**

Robins may contend that the asserted inaccuracies about him in Spokeo search results supply the concrete harm or certainly impending risk of harm necessary to demonstrate standing to assert his Section 1681e(b) claim.[5] But the inaccuracies that Robins alleges cannot salvage his claim.

As with his argument for standing based on the statutory violation alone, Robins cannot draw a valid analogy to a "harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." 136 S. Ct. at 1549. Publication of a false statement was not automatically actionable at common law. On the contrary, libel and slander require that false statements be harmful in order to be actionable. *See, e.g.*, *Runkle v. Meyer*, 3 Yeates 518, 519 (Pa. 1803) (statements must "render a man ridiculous, or throw contumely on him" to be actionable); 2 JAMES KENT, COMMENTARIES ON AMERICAN LAW 13 (1827) (statements must "tend[] [to] . . . expose him to public hatred, contempt, or ridicule").

---

[5] As explained above, Robins has effectively collapsed his other statutory violations into this claim. *See* page 13, *supra*.

19

Proof of actual injury was and is generally required. "The ground of the private action [for defamation] is the injury which the party has sustained, and his consequent right to damages as a recompense for that injury." 2 KENT, *supra*, at 21; *see also* RESTATEMENT (SECOND) OF TORTS § 559 (1977) ("A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."). In short, the law did not permit a claim for defamation unless the allegedly false statement causes actual harm.

Moreover, *per se* treatment was accorded (*i.e.*, harm was presumed) only to false statements that would "expose [the plaintiff] to public hatred, contempt, and ridicule." 2 KENT at 13; 4 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND *150 (1st ed. 1768); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13 (1990); RESTATEMENT (SECOND) OF TORTS § 559. These categories were confined to statements falsely accusing the plaintiff of a crime, or of a condition that might "exclude him from society" or "impair or hurt his trade or livelihood." 3 BLACKSTONE at *123; 2 KENT at 13.[6]

---

[6]      Blackstone confirms that, at the time of the framing of the Constitution, only accusations that "will of course be injurious" (3 Blackstone at *124)—of crime, of infectious disease, or of conduct that would automatically disqualify the subject from a "trade or livelihood, as to call a tradesman a bankrupt, a physician a quack, or a lawyer a knave"—were actionable without proof of special damage. *Id.* at *123. Any other words, even if derogatory, were actionable only if they "in fact" have "injurious effects." *Id.* at *124.

American law likewise has consistently limited presumed harm to specific kinds of statements that, on their face, were "virtually certain to cause serious injury to reputation." *Carey v. Piphus*, 435 U.S. 247, 262 (1978). These include words containing "a plain imputation of some crime liable to punishment," or accusing the plaintiff of something that made him categorically unfit for his office or trade. *McClurg v. Ross*, 5 Binn. 218, 219 (Pa. 1812) (emphasis omitted). Marginally flattering errors about facially neutral biographical details such as marital status or education are not "virtually certain to cause serious injury to reputation." *Carey*, 435 U.S. at 262. Thus, analogy to the common law does not relieve Robins from pleading a concrete and particularized injury that actually resulted or imminently will result from the inaccuracies.

Nor did Congress in the FCRA render any "instructive" judgment (136 S. Ct. at 1549) that the types of individualized inaccuracies that Robins pleads either cause or are highly likely to cause a concrete injury. Congress did conclude that it was appropriate to require consumer reporting agencies to adopt reasonable procedures to ensure the accuracy of information included in a consumer report. *Id.* at 1550. But the statute does not address inaccuracies at all.

Indeed, proof of inaccurate information is not an express element of the cause of action for violations of Section 1681e(b)—it has been read into the statute through judicial interpretation to avoid the imposition of *actual* damages in the

21

absence of inaccuracy. *See, e.g., Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 39 (D.C. Cir. 1984); *see also*, *e.g.*, *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 66 (1st Cir. 2008); *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000). There accordingly is no evidence that Congress made a judgment that *every* type of inaccuracy that might result from a procedural failure under FCRA amounted to a "real" harm (*Spokeo*, 136 S. Ct. at 1548). And, as explained above, the private-cause-of-action and statutory-damages provisions apply to every FCRA violation—even violations that do not require proof of an inaccurate statement. Those provisions of the statute therefore cannot embody any congressional judgment about the particular harm resulting from inaccurate information.

Indeed, the Supreme Court's rationale precludes acceptance of the "inaccurate information by itself equals concrete harm" argument. The Court recognized that some inaccurate information cannot produce concrete harm—citing the example of an inaccurate zip code. But the contention that any inaccurate information suffices to establish standing would necessarily be premised on the notion that inaccurate zip codes and other inaccurate immaterial information are sufficient to inflict concrete harm—precisely what the Supreme Court rejected.

For similar reasons, Robins cannot claim that the availability of any inaccurate information carries a certainly impending risk of concrete harm. Again,

inaccurate information that is immaterial (such as an erroneous zip code or other minor discrepancy) cannot generate the certainly impending risk of real harm.

In short, even considered in tandem with the inaccuracies Robins alleges, the specific violations claimed here do not "cause harm or present any material risk of harm" such that Robins may be excused from satisfying the generally applicable standard for assessing claims of injury in fact.

## II. ROBINS HAS ALLEGED NEITHER AN ACTUAL OR IMPENDING INJURY NOR THE CAUSATION NECESSARY FOR ARTICLE III STANDING.

The central remaining issue in this case is whether this Court's "ultimate conclusion—that Robins adequately alleged an injury in fact—was correct." 136 S. Ct. at 1550. As discussed above, Robins cannot base any such injury in fact on the mere nature of the statutory violation he pleaded or on the bare claim that inaccurate information about him was available on the Spokeo website. And, because he fails to plead anything else other than speculative harms, he cannot satisfy the concreteness requirement of Article III.

### A. The Complaint's Allegations Of Direct Harm Do Not Satisfy *Clapper*.

Robins summarily alleged in his operative complaint that inaccuracies in Spokeo search results caused imminent harm to his "employment prospects." ER40:8. Robins thus may now contend that, even if he has not alleged any actual employment-related injury, the risk of such harm based on the particular inaccurate

23

information that Spokeo allegedly published is sufficiently concrete for Article III purposes.

As an initial matter, the operative complaint's allegations on this point are wholly conclusory and thus inadequate. This Court noted that the allegations in the original complaint were "sparse," 742 F.3d at 410, and those in the operative amended complaint are no less so. This lack of detail ultimately did not matter under this Circuit's *Edwards* precedent—which the Supreme Court overruled in reviewing this case—because the allegation of a particularized statutory violation effectively was itself sufficient to establish standing. *See* 742 F.3d at 413-14.

Unable to rely on *Edwards*, Robins now must support the elements of standing "in the same way as any other matter for which a plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (citing *Lujan*, 504 U.S. at 561). Robins thus must establish standing here through "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals . . . supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The pleadings must meet a "plausibility standard" that requires alleging "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 560 (2007); *see also Machlan v. Procter &*

24

*Gamble Co.*, 77 F. Supp. 3d 954, 959 (N.D. Cal. 2015) (plausibility pleading standard applies to standing).

Robins offers only conclusory allegations of possible future injury. While he asserts that the harm to his "employment prospects" is "also imminent," ER40:8, at ¶ 35, he alleges no facts to support a claim that such harm is possible, let alone certainly impending or imminent. The use of "imminent" with no supporting factual allegations is precisely the sort of conclusory allegation that is insufficient under *Iqbal* and *Twombly*. And Robins pleaded no other type of harm in the operative amended complaint, which he never sought to amend.

Even putting aside the conclusory nature of his allegations, Robins does not plausibly plead any injury that is "certainly impending" based on the non-derogatory inaccuracies allegedly reflected in his Spokeo search results. Robins asks this Court to presume that one or more prospective employers, at some point in the near term, will: (1) use Spokeo to check Robins' background—although he does not allege that any person other than he or his lawyers searched for him prior to this litigation; (2) encounter the pleaded inaccuracies; (3) conduct no further research that would reveal accurate information; (4) consider the marital, wealth, and educational information to be both material and adverse to employment; and (5) base an adverse decision not to interview or not to hire on that information.

25

Nothing in the complaint suggests why each of these steps is likely, let alone certain, to occur. Robins does not allege a basis to infer that a single prospective employer has ever used the Spokeo search engine to check his background, much less that the decision-making of any prospective employer would be affected by any of the pleaded inaccuracies. Instead, Robins simply asks the Court to speculate that they would.

*Clapper* and related cases preclude reliance on such speculative harms. The "highly attenuated chain of possibilities" hypothesized by Robins "does not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 133 S. Ct. at 1148. This is particularly true because the Supreme Court has "decline[d] to abandon [its] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors" like the unknown employers who may or may not choose to look up, review, and rely on Robins' Spokeo search results. *Id.* at 1150. The employer-driven injury that Robins attempts to plead is no more than theoretically *possible* in light of the allegations in the complaint. It plainly is not "certainly impending." *Id.* at 1148.[7]

---

[7] Robins may draw attention to the passing observation in *Clapper* that some earlier Supreme Court decisions did not require plaintiffs to plead that it was "literally certain that the harms they identify will come about." 133 S. Ct. at 1150 n.5. Those decisions found standing when there was a "substantial risk" of harm sufficiently certain to make "reasonable" the payment of "costs to mitigate or avoid that harm." *Id.* But Robins has alleged no such payment. And the Supreme Court expressed doubt over any distinction between the "certainly impending" (cont'd)

26

Similarly, Robins' conclusory allegation of anxiety, *see* ER40:8 ¶ 37, is inadequate because it is premised on "diminished employment prospects," *id.*, that are themselves conclusory and speculative. *See* Spokeo Appellee Br. (Dkt. No. 26) 29-35. Any claim of anxiety about this harm to his employment prospects would be inadequate for the same reasons that the Supreme Court found the "subjective fear of surveillance" wanting in *Clapper*. 133 S. Ct. at 1153. Robins may not "manufacture standing" through asserted anxiety over "hypothetical future harm that is not certainly impending" any more than the *Clapper* plaintiffs could make their own standing by incurring "self-inflicted" costs in anticipation of similarly speculative harm. *Id.* at 1155; *see also* Spokeo Appellee Br. (Dkt. No. 26) 36-40.[8]

---

standard in *Clapper* and the "substantial risk" standard in prior cases. *Id.* It held that the "attenuated chain of inferences necessary to find harm" in *Clapper* was insufficient to meet either test (*id.*)—and the similarly "attenuated chain of inferences necessary to find harm," *id.* at 1150 n.5, in the present case likewise falls short of the "material risk of harm" that, the Court held, must be pleaded here (136 S. Ct. at 1550).

[8]  Robins has suggested previously that he has successfully pleaded injury in fact simply by seeking injunctive relief. That is wrong, most notably because neither injunctive nor declaratory relief is available under the FCRA. *See Washington v. CSC Credit Services Inc.*, 199 F.3d 263, 268-69 (5th Cir. 2000). But even if such relief were available, Robins' lack of actual or imminently threatened injury is not altered by the request for an injunction. If anything, the bar is raised since a plaintiff seeking injunctive relief "must demonstrate a real or immediate threat of an *irreparable* injury." *Clark v. City of Lakewood,* 259 F.3d 996, 1007 (9th Cir. 2001) (emphasis added). Robins has not satisfied that standard here.

### B. *Clapper* Underscores Robins' Failure To Plead Causation.

*Clapper* also has strengthened an alternate ground for affirmance advanced in our principal brief (Dkt. No. 26, at 40-45): Robins' failure to sufficiently plead that Spokeo caused any injury that might befall him. To satisfy that element, Robins had to show that his alleged injury is "'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)) (alterations in original); *see also Clapper*, 133 S. Ct. at 1150-53.

And causation must be "more than 'attenuated.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011). Thus, "[i]n cases where a chain of causation 'involves numerous third parties' whose 'independent decisions' collectively have a 'significant effect' on plaintiffs' injuries, the Supreme Court and this [C]ourt have found the causal chain too weak to support standing at the pleading stage." *Id*. (citing *Allen v. Wright*, 468 U.S. 737, 759 (1984); *San Diego Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126-27 (9th Cir. 1996)); *see also Clapper*, 133 S. Ct. at 1148.

Finally, where a long chain of events underlies a plaintiff's theory of injury, the plaintiff cannot establish causation if the links in the chain are speculative, tenuous, or rely on conjecture about the behavior of other parties. *See Clapper*, 133

28

S. Ct. at 1148, 1152 n.7; *National Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002); *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000). Robins "cannot rely on speculation about the unfettered choices made by independent actors not before the court." *Clapper*, 133 S. Ct. at 1150 n.5 (internal quotation marks and citation omitted).

Here, any contention that Robins might be harmed by some future action by an unknown prospective employer would depend on a variety of unknown factors, and thus is the very type of "standing theor[y] that rest[s] on speculation about the decisions of independent actors" that the Supreme Court rejects. *Clapper*, 133 S. Ct. at 1150. Moreover, Spokeo expressly disclaims the accuracy of its reports of data collected and provided by others, and explicitly forbids their use for any FCRA purpose, ER40:12 ¶¶ 56-57, which at least reduces (and may well practically eliminate) the likelihood of reliance on that information for hiring purposes. Under these circumstances, Robins' bald allegations provide no basis for an inference of a material risk of certainly impending harm. The judgment thus should be affirmed on this separate basis even were the Court to conclude that Robins had adequately pleaded injury in fact.

## CONCLUSION

The judgment should be affirmed.

29

Respectfully submitted,

/s/ Andrew J. Pincus
    Andrew J. Pincus

John Nadolenco
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
*jnadolenco@mayerbrown.com*

Donald M. Falk
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000
*dfalk@mayerbrown.com*

Andrew J. Pincus
Archis A. Parasharami
Stephen C.N. Lilley
Daniel E. Jones
MAYER BROWN LLP
1999 K ST NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
*apincus@mayerbrown.com*
*aparasharami@mayerbrown.com*
*slilley@mayerbrown.com*
*dejones@mayerbrown.com*

*Attorneys for Defendant-Appellee Spokeo, Inc.*

**Form 6.     Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ this brief contains _6,972_ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains_____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* Microsoft Word 2007 *(state font size and name of type style)* _____ *, or*

☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)* _____ .

Signature    /s/Andrew J. Pincus

Attorney for    Defendant-Appellee Spokeo, Inc.

Date    July 11, 2016

| 9th Circuit Case Number(s) | 11-56843 |

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | Jul 11, 2016 |.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s/Andrew J. Pincus |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | |.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) | |