

3033 Wilson Boulevard
Suite 700
Arlington, VA 22201
703.243.9423
www.consovoymccarthy.com

February 1, 2017

Molly C. Dwyer, Clerk of the Court
United States Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA 94119-3939

Re:     *Thomas Robins v. Spokeo, Inc.*, No. 11-56843 [Federal Rule of
        Appellate Procedure 28(j) Notice of Supplemental Authority]

Dear Ms. Dwyer:

The Ninth Circuit has issued a *second* decision rejecting Spokeo's reading of
the Supreme Court's opinion. In *Van Patten v. Vertical Fitness Group, LLC*,
--- F.3d ---, No. 14-55980 (9th Cir. Jan. 30, 2016), this Court held that a
plaintiff receiving unwanted text messages in violation of the TCPA has
standing without any showing beyond violation of the statute itself. As the
Court explained, both the tradition of hearing similar claims in American
courts and respect for Congress's judgment supported the conclusion. *Id*. *9-
11. Because such violations "infringe the same privacy interests" the TCPA
"sought to protect," a "plaintiff alleging a violation … 'need not allege any
*additional* harm beyond the one Congress has identified.'" *Id.* *11 (quoting
*Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2016)).

*Van Patten* rejected Spokeo's argument here—*viz.*, that Article III requires
the plaintiff to show that the statutory violation caused harm unique to him.
The inquiry is whether the plaintiff has "suffered an invasion" of a "legally
protected interest that is concrete"—not whether a violation of that concrete
interest caused tangible harm. *Id*. *8 (citation and quotation omitted). The
TCPA's "right to be free from certain types of phone calls and texts absent
consumer consent," in other words, is "a concrete harm" not because of how
it may (or may not) have affected *this* plaintiff, but because Congress found
that unwanted calls and texts cause intangible harm to all recipients. *Id*. *10
(citing *Spokeo*, 136 S. Ct. at 1549).

To be sure, the analysis here requires an additional step because the FCRA's interests in fair and accurate credit reports are enforced through a procedural requirement, and not all procedural violations "present any material risk of harm" to those interests. *Id*. *10. Thus, the Court must determine whether Spokeo's dissemination of false reports about Robins's employment history, salary, age, and marital status are the types of violations that impair the "*interests* protected by the FCRA ...." *Id*. *8 (emphasis added). But Spokeo's argument that Article III requires Robins to show how the FCRA violation caused harm unique to him is now foreclosed.

Respectfully submitted,


/s/ William S. Consovoy
William S. Consovoy



Enclosure(s)

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2017, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ William S. Consovoy
William S. Consovoy

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRADLEY VAN PATTEN, an individual, on behalf of himself and all others similarly situated, *Plaintiff-Appellant*, | No. 14-55980 D.C. No. 3:12-cv-01614-LAB-MDD |
| v. | |
| VERTICAL FITNESS GROUP, LLC, a limited liability company; ADVECOR, INC., a California corporation, *Defendants-Appellees.* | OPINION |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted May 4, 2016
Pasadena, California

Filed January 30, 2017

Before: William A. Fletcher and Ronald M. Gould, Circuit
Judges, and Ivan L.R. Lemelle,[*] District Judge.

Opinion by Judge Gould

---

[*] The Honorable Ivan L.R. Lemelle, United States District Judge for
the Eastern District of Louisiana, sitting by designation.

## SUMMARY[**]

### Telephone Consumer Protection Act

The panel affirmed the district court's grant of summary judgment in favor of the defendants in an action under the Telephone Consumer Protection Act regarding text messages about a gym membership.

The panel held that under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the plaintiff alleged a concrete injury sufficient to confer Article III standing to pursue his TCPA claim.

The panel held that, for purposes of the TCPA, the scope of a consumer's consent to being contacted depends on the transactional context in which it is given. Citing FCC orders, the panel held that an effective consent is one that relates to the same subject matter as is covered by the challenged calls or text messages. Agreeing with other circuits, the panel held that a consumer may revoke his or her consent but in that case must clearly express that he or she does not want to receive the messages or calls. The panel concluded that, in this case, the plaintiff gave prior express consent to receive the text messages at issue and did not effectively revoke his consent.

Affirming the district court's summary judgment on claims asserting violations of California Business and Professional Code §§ 17583.41 and 17200, the panel held that the plaintiff did not establish economic standing.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

George Rikos (argued), Law Offices of George Rikos, San Diego, California; Craig M. Nicholas and Alex M. Tomasevic, Nicholas & Tomasevic LLP, San Diego, California; for Plaintiff-Appellant.

Alexander Papaefthimiou (argued), Law Office of Alexander E. Papaefthimiou, Camarillo, California; Gregory M. Harrison, Gregory M. Harrison APC, San Diego, California; for Defendant-Appellee Advecor, Inc.

Mark E. Ellis (argued), Ellis Law Group LLP, Sacramento, California, for Defendant-Appellee Vertical Fitness Group LLC.

Brian Melendez, Dykema Gossett PLLC, Minneapolis, Minnesota, for Amicus Curiae ACA International.

## OPINION

GOULD, Circuit Judge:

This is a consumer protection case arising from text messages about a gym membership. The parties dispute the scope of the consumer's consent to being contacted after he gave his cell phone number while signing up for a gym membership, and whether he revoked his consent when he cancelled the membership. For purposes of the Telephone Consumer Protection Act of 1991 (TCPA), we hold that the scope of a consumer's consent depends on the transactional context in which it is given. The call or text message must be based on the circumstance in which the consumer gave his or

her number.  The consumer may revoke his or her consent but in that case must clearly express that he or she does not want to receive the messages or calls.

For the reasons that follow, we conclude that Plaintiff-Appellant Bradley Van Patten gave prior express consent to receive the text messages at issue, and  did not effectively revoke his consent, hence dooming his TCPA claim.  Also, as for his claims under California law asserting violations of California Business and Professions Code §§ 17583.41 and 17200, Van Patten did not establish economic standing.  We affirm the district court's grant of summary judgment in favor of Defendant-Appellees Vertical Fitness Group, LLC and Advecor, Inc.

## I

On March 21, 2009, Plaintiff-Appellant Bradley Van Patten visited a Gold's Gym franchise in Green Bay, Wisconsin to obtain information about a gym membership. During the visit, Van Patten submitted a desk courtesy card to the gym, wherein he wrote his demographic, financial, and contact information to determine whether he was pre-qualified to become a member.  In this data Van Patten listed his cell phone number as his contact number.

Van Patten then met with the gym's manager, an employee of Defendant-Appellee Vertical Fitness Group, LLC, to discuss the possibility of a membership.  During this conversation, the manager filled out a Gold's Gym Membership Agreement on behalf of Van Patten, which Van Patten signed.  The manager wrote Van Patten's cell phone number in the phone number field.  Within three days of opening his gym membership, Van Patten called Gold's Gym

to cancel his membership.  Van Patten moved to California in the summer of 2009, but he kept his Wisconsin cell phone number.

Vertical Fitness owned or managed several of the Gold's Gym franchises.  Although Vertical Fitness did not own the gym Van Patten joined, it operated and managed the gym.  In the spring of 2012, many of the Gold's Gym franchises in Wisconsin and Minnesota, including the gym that Van Patten had joined, ended their franchise relationships with Gold's Gym and became "Xperience Fitness" gyms. Vertical Fitness owned the "Xperience Fitness" brand and trademark.

After the brand change, Vertical Fitness turned to its marketing partner, Defendant-Appellee Advecor, Inc., to help announce the gym's brand change to current and former gym members and invite members to return.   One such announcement was made via text messages.  Vertical Fitness gave the phone numbers of former or inactive gym members to Advecor, and Advecor sent the text messages.  Van Patten received his first text message on May 14, 2012.   The message read:

> Golds [sic] Gym is now Xperience Fitness.
> Come back for $9.99/mo, no commitment.
> Enter for a chance to win a Nissan Xterra!
> Visit Myxperiencefitness.com/giveaway

He received a similar text on June 25, 2012.

Van Patten filed a putative class action lawsuit arising out of the text messages on June 28, 2012.  He alleged that the unauthorized text messages Defendants sent "caused consumers actual harm," including "the aggravation that

6      VAN PATTEN V. VERTICAL FITNESS GROUP

necessarily accompanies wireless spam" and that consumers "pay their cell phone service providers for the receipt of such wireless spam." Van Patten asserted three causes of action: (1) violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227; (2) violation of California Business and Professions Code § 17538.41; and (3) violation of California Business and Professions Code § 17200. The district court granted Van Patten leave to file a first amended complaint, in which he added Advecor as a defendant and added the allegation that he received two text messages. The district court granted Van Patten's motion for class certification,[1] but on May 20, 2014, the court granted summary judgment in favor of Defendants on all of Van Patten's claims.

## II

On appeal, Van Patten argues that the district court erred by granting Defendants' motions for summary judgment on all three of his claims. We have jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 950 (9th Cir. 2009). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We address each of Van Patten's claims in turn.

---

**[1]** The district court certified a national class for Van Patten's TCPA claim but declined to certify a California-based subclass for Van Patten's California Business and Professions Code § 17538.41 and § 17200 claims.

## A. The Telephone Consumer Protection Act of 1991

The TCPA makes it "unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C). The TCPA generally prohibits making nonemergency, unsolicited calls advertising "property, goods, or services" using automatic dialing systems and prerecorded messages to telephones and cellular phones. *Id.* § 227(a)(5); *id.* § 227 (b)(1)(A)(iii). Although the TCPA does not define a "call," the Federal Communications Commission (FCC), the agency implementing the TCPA, has interpreted the TCPA to "encompass[ ] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls," which are generally referred to as text messages. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (July 3, 2003) (the "2003 Order"); *see also Satterfield*, 569 F.3d at 954 (holding that the FCC's interpretation that a text message is a "call" under the TCPA is reasonable). A call or text is not unsolicited, however, where the recipient gave the sender "prior express consent." 47 U.S.C. § 227(b)(1)(A).

### 1. Article III Standing

Before turning to the merits of Van Patten's TCPA claim, we first address whether Van Patten has standing under Article III of the Constitution. Article III limits federal judicial power to "Cases" and "Controversies," U.S. Const. art. III, § 2, and standing to sue "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong," *Spokeo, Inc. v. Robins*,

136 S. Ct. 1540, 1547 (2016). To satisfy Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (applying the traditional standing test from *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff establishes injury in fact, if he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

The Supreme Court most recently addressed the concrete injury requirement of standing in *Spokeo v. Robins*. The Court reiterated that "Article III standing requires a concrete injury even in the context of a statutory violation," and that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. In *Spokeo*, the plaintiff alleged violations of the Fair Credit Reporting Act (FCRA), based on a website's publication of inaccurate consumer information regarding the plaintiff's age, martial status, educational background, and other demographic information. *Id.* at 1546. The FCRA sets procedural requirements for consumer reporting agencies to ensure that credit reporting is fair and accurate. *See* 15 U.S.C. § 1681e. On appeal, the Ninth Circuit had held that the relevant interests protected by the FCRA were sufficiently concrete and particularized to satisfy the requirements of Article III standing. *Id.* at 1546. The Supreme Court, however, vacated the judgment and remanded the case, holding that the standing analysis was incomplete because we had not distinguished between concreteness and particularization. *Id.* at 1550. The Supreme

Court did not determine whether the plaintiff had suffered an injury sufficient to confer standing to sue, but emphasized that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549. The Court also observed that intangible harms a plaintiff alleges can satisfy the injury-in-fact requirement. *See id.* ("[W]e have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete.").

Here, Defendants argue that Van Patten did not establish a concrete injury-in-fact necessary to pursue his TCPA claim in light of *Spokeo*.**[2]** We disagree.

As the Supreme Court explained in *Spokeo*, "both history and the judgment of Congress play important roles" in supporting our conclusion that a violation of the TCPA is a concrete, *de facto* injury. *Id.* Actions to remedy defendants' invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states. *See* Restatement (Second) of Torts § 652(B) (Am. Law Inst. 1977). And in enacting the TCPA, Congress made specific findings that "unrestricted telemarketing can be an intrusive invasion of privacy" and are a "nuisance." Telephone Consumer Protection Act of 1991, Pub. L. 102–243, § 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991); *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax

---

**[2]** After oral argument, we ordered the parties to file supplemental briefs addressing whether *Spokeo* affects Van Patten's standing to bring his TCPA claim.

advertisements. *See* Pub. L. 102–243, § 2, ¶ 12. The session law for the TCPA itself stated: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* We also have recognized this congressional purpose. *Satterfield*, 569 F.3d at 954.

The TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent. Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm. We recognize that Congress has some permissible role in elevating concrete, de facto injuries previously inadequate in law "to the status of legally cognizable injuries." *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578). We defer in part to Congress's judgment, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.* We also recognize that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.*

Congress aimed to curb telemarketing calls to which consumers did not consent by prohibiting such conduct and creating a statutory scheme giving damages if that prohibition was violated. Unlike in *Spokeo*, where a violation of a procedural requirement minimizing reporting inaccuracy may not cause actual harm or present any material risk of harm, *see id.* at 1550, the telemarketing text messages at issue here,

absent consent, present the precise harm and infringe the
same privacy interests Congress sought to protect in enacting
the TCPA.  Unsolicited telemarketing phone calls or text
messages, by their nature, invade the privacy and disturb the
solitude of their recipients.  A plaintiff alleging a violation
under the TCPA "need not allege any *additional* harm beyond
the one Congress has identified." *Id.* at 1549 (emphasis in
original). *Cf. Gomez v. Campbell-Ewald Co.*, 136 S. Ct. 663,
672 (2016) (affirming that "the District Court retained
jurisdiction to adjudicate Gomez's [TCPA] complaint.").

We hold that Van Patten alleged a concrete injury in fact
sufficient to confer Article III standing.

### 2.  Prior Express Consent

The parties do not dispute that Defendants sent Van
Patten text messages using an automatic telephone dialing
system; we need only assess whether Van Patten gave prior
express consent.  Van Patten contends that the district court
erred by granting Defendants' motion for summary judgment
on his TCPA claim because he never gave "prior express
consent" to receive text messages from Defendants, and even
if he had, he revoked that consent by cancelling his gym
membership.  We address those contentions in turn, but
disagree and conclude that Van Patten—based on the context
in which he gave his phone number—consented to receiving
the text messages.  Also, Van Patten did not expressly revoke
his consent.

Express consent is not an element of a plaintiff's prima
facie case but is an affirmative defense for which the

defendant bears the burden of proof.**[3]** *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (Jan. 4, 2008) (the "2008 Order") ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent . . . . Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent."); *see also Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 n.1 (9th Cir. 2011) ("'[E]xpress consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof."). The district court correctly stated that prior express consent is a complete defense to Van Patten's TCPA claim. *Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069, 1073 (S.D. Cal. 2014). We agree and next address whether there was prior express consent that was effective here as a defense to the text messages that were sent.

Because the TCPA does not define the phrase "prior express consent," we turn to the FCC's Orders and Rulings,

---

**[3]** In *Meyer v. Portfolio Recovery Associates*, we set out a TCPA claim as: "(1) the defendant called a cellular telephone number, (2) using an automatic telephone dialing system, (3) without the recipient's prior express consent." 707 F.3d 1036, 1043 (9th Cir. 2012). We there discussed prior express consent as a consideration relating to a TCPA claim analyzed in the context of a preliminary injunction and whether the plaintiff established that he was likely to succeed on the merits of his claim. *See id.* We think it plain from the statutory language that prior express consent is an affirmative defense, not an element of a TCPA claim, but we do not retreat from the principle that a plaintiff seeking a preliminary injunction must show the absence of prior express consent as pertinent to the likelihood of success on the merits.

which interpret and clarify the term.  Defendants rely on *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) (the "1992 Order") and stress one sentence in particular: "[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."  7 F.C.C. Rcd. at 8769.  Emphasizing this language, Defendants argue that Van Patten gave "prior express consent" to being contacted at his cellular telephone number by providing that number in connection with his application for a gym membership.

We do not question, in this appeal from an order of the district court, the validity of the FCC's interpretation of "prior express consent."  *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119–21 (11th Cir. 2014); *US W. Commc'ns, Inc. v. Jennings*, 304 F.3d 950, 958 n.2 (9th Cir. 2002).  We read the 1992 Order in a way that harmonizes with the TCPA's text and purpose, as well as the FCC's other orders and rulings.  In our view, an effective consent is one that relates to the same subject matter as is covered by the challenged calls or text messages.

The TCPA was created in response to the ever increasing consumer complaints regarding telemarketing calls.  "The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of [automatic dialing] to communicate with others by telephone in a manner that would be an invasion of privacy."  *Satterfield*, 569 F.3d at 954.  Taking into account the statutory language that prior consent must be "express" and the TCPA's legislative history, we do not read the 1992 Order to mean that the FCC has determined that providing a phone number in itself means

that the consumer has expressly consented to contact for any purpose whatsoever. Instead, the consent must be considered to relate to the type of transaction that evoked it.

To aid the FCC's interpretation of "prior express consent" in its 1992 Order, the FCC cited a House of Representatives report on the TCPA, which stated that when people provide their telephone numbers, "the called party has in essence requested the contact by providing the caller with their telephone number for *use in normal business communications*." 7 F.C.C. Rcd. at 8769 n.57 (quoting H.R. Rep. No. 102–317 at 13) (emphasis added). This supports that a consumer consents to contact for transaction-related communications when the consumer provides his or her phone number to the caller; it does not support the view, argued by Defendants, that the consumer consents to any and all contact.

The FCC's 2008 Order interpreting prior express consent also indicates a more narrow view than assuming that giving a phone number alone amounts to consent to receive calls or texts at that number irrespective of purpose. In its 2008 Order, the FCC was asked by a trade association to rule on whether a creditor has permission to call a debtor. *See* 2008 Order, 23 F.C.C. Rcd. at 563. The FCC "conclude[d] that the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number *regarding the debt*." *Id.* at 564 (second emphasis added). The FCC cited to the legislative history of the TCPA and the House Report's exception for "normal business communications." *Id.* The 2008 Order went on to state that giving a contact phone number is not prior express consent for any contact, instead "prior express consent is deemed to

be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction resulted in the debt owed." *Id.* at 564–65.

FCC orders that took effect after the text messages at issue in this case further explain the FCC's interpretation of "prior express consent." In 2012, the FCC imposed further restrictions on telemarketing calls and required prior express *written* consent for texts and calls that "include[] or introduce[] an advertisement" or "constitute[] telemarketing." *See* 47 C.F.R. § 64.1200(a)(2). Because the alleged conduct here took place before the rule took effect on October 16, 2013, Defendants need not have obtained prior express *written* consent from Van Patten. In the 2012 Order, the FCC addressed a comment that argued against requiring prior express written consent. The commenter had urged that "customers may orally provide their wireless phone number as a point of contact and therefore those customers expect *marketing* and service calls." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1840 (Feb. 15, 2012) (the "2012 Order") (emphasis in original). The FCC disagreed with this broad interpretation of consent: "Consumers who provide a wireless phone number for a limited purpose – for service calls only – do not necessarily expect to receive telemarketing calls that go beyond the limited purpose for which oral consent regarding service calls may have been granted." *Id.*

A 2014 FCC ruling on the scope of a consumer's consent also informs our understanding of the FCC's interpretation of prior express consent. The ruling addressed whether a consumer's consent in joining a text-based social group constitutes prior express consent to receive administrative

16     VAN PATTEN V. VERTICAL FITNESS GROUP

texts confirming the consumer's interest in joining the group. *See In re GroupMe, Inc./Skype Communications S.A.R.L. Petition for Expedited Declaratory Ruling*, 29 F.C.C. Rcd. 3442, 3443 (Mar. 27, 2014). Reasoning that "Congress did not expect the TCPA to be a barrier to normal, expected, and desired business communications," *id.* at 3444, the FCC considered the GroupMe administrative texts "to be normal business communications," *id.* at 3445. The FCC held that

> [t]o the extent that a consumer, in the absence of instructions to the contrary, agrees to participate in a GroupMe group, agrees to receive associated calls and texts, and provides his or her wireless telephone number to the group organizer for that purpose, we interpret that as encompassing consent for GroupMe to send certain administrative texts that relate to the operation of that GroupMe group.

*Id.* at 3446. The FCC reasoned that the consumer gave permission to be contacted at that number in connection with that particular GroupMe texting group. *Id.*

We conclude that the FCC has established no rule that a consumer who gives a phone number to a company has consented to be contacted for any reason. Instead, FCC orders and rulings show that the transactional context matters in determining the scope of a consumer's consent to contact.

In this case, we hold that as a matter of law Van Patten gave prior express consent to receive Defendants' text messages. He gave his cellular telephone number for the purpose of a gym membership contract with a Gold's Gym

franchised gym. Van Patten giving his phone number for the purpose of his gym membership agreement did not amount to consent to be contacted for all purposes. Under the logic of the FCC's orders, Van Patten gave his consent to being contacted about some things, such as follow-up questions about his gym membership application, but not to all communications. The scope of his consent included the text messages' invitation to "come back" and reactivate his gym membership. The text messages at issue here were part of a campaign to get former and inactive gym members to return, and thus related to the reason Van Patten gave his number in the first place, to apply for a gym membership.

The parties also dispute whether Van Patten gave prior express consent to be contacted by Vertical Fitness. Defendants contend that Van Patten gave Vertical Fitness prior express consent because the particular gym he joined did not change ownership, Vertical Fitness remained the operator, and only the brand identity changed from Gold's Gym to Xperience Fitness. From when Van Patten initially joined the gym to when the text messages were sent, ownership and operation of the gym did not change. That the brand affiliation changed does not affect that the gym was owned and operated by the same entities.

### 3. Revocation of Prior Express Consent

Van Patten further argues that even if he gave prior express consent, by submitting his phone number in the gym membership application, he revoked his consent when he cancelled the gym membership. The parties do not seriously dispute that consumers can revoke their consent, but they disagree as to whether Van Patten revoked his consent. We hold that although consumers may revoke their prior express

consent, Van Patten's gym cancellation was not effective in doing so here.

We first address whether consent is revocable under the TCPA. The TCPA does not explicitly grant consumers the right to revoke their prior express consent. *See* 47 U.S.C. § 227; *see also* 2012 Order, 27 F.C.C. Rcd. at 15394 ¶ 8 (noting that neither text nor legislative history of the TCPA directly addresses circumstances where prior express consent is deemed revoked). At least two of our sister circuits and several lower courts have concluded that consumers may revoke their prior express consent without temporal limitations. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255–56 (11th Cir. 2014); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 272–73 (3d Cir. 2013); *Munro v. King Broad. Co.*, No. C13-1308JLR, 2013 WL 6185233, at *3 (W.D. Wash. Nov. 26, 2013) (collecting cases).

Courts have given three main reasons for concluding that consumers may revoke their consent under the TCPA. First, such a holding is consistent with the common law principle that consent is revocable. *See Gager*, 727 F.3d at 270. Courts have found that Congress did not depart from the common law understanding of consent, and at common law, consent may be withdrawn. *Id.* (citing *Neder v. United States*, 527 U.S. 1, 21 (1999) ("[W]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.")).

Second, allowing consumers to revoke their prior consent aligns with the purpose of the TCPA. *Id.* at 271; *Osorio*, 746 F.3d at 1255. Because the TCPA is a remedial statute

intended to protect consumers from unwanted automated telephone calls and messages, it should be construed in accordance with that purpose. *See Gager*, 727 F.3d at 271. Allowing consent to be revoked is consistent with that purpose.

Third, the FCC has stated persuasive guidance implying that consumers may revoke their consent. In a declaratory ruling in *SoundBite Communications, Inc.*, 27 F.C.C. Rcd. 15391, the FCC stated that "requests to stop receiving voice calls . . . can be confirmed during the same call in which a consumer has expressed a desire to opt out . . . ." 2012 Order, 27 F.C.C. Rcd. at 15398 ¶ 13. The FCC stated that a consumer may revoke his or her prior express consent by sending an opt-out request to the sending party. *Id.* at 15397 ¶ 11 n.47; *id.* at 15398 ¶ 13. For example, a consumer may request "that no further text messages be sent." *Id.* at 15394 ¶ 7. While the thrust of the *SoundBite* ruling explained why it is permissible to send a confirmatory opt-out message, the decision indicates that the FCC endorses the ability of consumers to revoke their prior express consent. *See Gager*, 727 F.3d at 271–72.

The FCC also has since clarified that consumers may revoke consent in its July 2015 Declaratory Ruling and Order. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961 (July 10, 2015) (the "2015 Order"). The 2015 Order stressed that consumers "have a right to revoke consent, using any reasonable method including orally or in writing." *Id.* at 7996 ¶ 64. The FCC also specified ways that a consumer may revoke a call: "by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities." *Id.*

The FCC emphasized that the TCPA does not permit the calling party to designate the exclusive means of revocation, and instead, the called party must "clearly express his or her desire not to receive further calls." *Id.* at 7997 ¶ 67. It is reasonable for the FCC to interpret the TCPA to permit revocation of consent. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984).

Concluding that the reasoning of our sister circuits is persuasive and the FCC's interpretation of the TCPA is reasonable, we agree that the TCPA permits consumers to revoke their prior express consent to be contacted by telephone autodialing systems.

We next address whether in fact Van Patten revoked his consent. Van Patten argues that cancelling his gym membership sufficiently communicated his desire to no longer be contacted. But we conclude that because Van Patten did not clearly express his desire not to receive further text messages, he did not revoke his consent.

Revocation of consent must be clearly made and express a desire not to be called or texted. That was not done here. No evidence in the record suggests that Van Patten told Defendants to cease contacting him on his cell phone. Some ways Van Patten could have communicated his revocation include, but are not limited to, plainly telling Defendants not to contact him on his cell phone when he called to cancel his gym membership or messaging "STOP" after receiving the first text message.

Because Van Patten did not revoke his consent to be contacted, we affirm the district court's grant of summary judgment for Defendants on their affirmative defense that

Van Patten consented to receive the text messages at issue here.

## B. California Business and Professions Code § 17538.41 and § 17200

Van Patten also contends that the district court erred by granting summary judgment to Defendants on his California Business and Professions Code claims. We disagree and affirm the district court's grant of summary judgment on his state-based claims.

Van Patten alleges that Defendants violated California Business and Professions Code § 17538.41, which provides that "no . . . entity conducting business . . . in this state shall transmit, or cause to be transmitted, a text message advertisement to a mobile telephony services handset, pager, or two-way messaging device that is equipped with short message capability or any similar capability allowing the transmission of text messages." Van Patten additionally alleges Defendants violated California Business and Professions Code § 17200, which provides remedies for "any unlawful, unfair or fraudulent business act or practice."

Under California law, Van Patten does not have standing to bring either of these statutory claims. Proposition 64, passed by California citizens in 2004, sets a more limited standing requirement on plaintiffs seeking relief under California's Unfair Competition Law and/or False Advertising Law. Plaintiffs must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of

the claim." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011) (emphasis in original). This economic injury requirement is "more restrictive than federal injury in fact" because it encompasses fewer kinds of injuries. *Id.* at 886. It was not, however, "intended to be quantitatively more difficult to satisfy" than the threshold for economic injuries that satisfy Article III standing. *Id.* That is, "the quantum of lost money or property necessary to show standing" under Proposition 64 is only so much as would satisfy federal standing. *Id.* This economic injury requirement was made with identical language to both relevant remedial sections of Van Patten's California claims. *See* Cal. Bus. & Prof. Code § 17535 ("Actions for injunction under this section may be prosecuted by . . . any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter."); Cal. Bus. & Prof. Code § 17204 ("Actions for relief pursuant to this chapter shall be prosecuted . . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."); *see also Kwikset*, 246 P.3d at 883–85.

Van Patten cannot prove that the text messages caused him to suffer an economic injury "which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Kwikset*, 246 P.3d at 886. Although Van Patten argues that he was charged for the text messages sent by Defendants, the record shows that he paid for an unlimited text messaging plan. Under this unlimited plan, regardless of how many text messages Van Patten received during a month, he still paid the same monthly fee. Van Patten contends that he was still charged for the texts because every text message he receives under his unlimited text messaging service ultimately affects his cellular telephone provider's bundled pricing. His argument is that cellular companies raise the

prices of their bundled plans when text message traffic increases to the point that cellular operators' profit margins decrease too much. But this argument is hypothetical and conjectural, and Van Patten has not demonstrated that any price increase was caused by Defendants' conduct. Van Patten has not shown and cannot demonstrate any economic injury.

Van Patten lacks standing to bring his claim under California Business and Professions Code §17538.41 and § 17200. *See id.* at 883–87. We affirm the district court's grant of summary judgment in favor of Defendants on these claims.

## III

We affirm the district court's grant of summary judgment in favor of Defendants on all claims presented.

**AFFIRMED.**